IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20CV685

| | |
|---|---|
| AFRICA E. OTIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| CITY OF MOUNT HOLLY, DANNY ) | |
| JACKSON, CITY MANAGER, ) | |
| individually and in his official capacity, ) | |
| MILES BRASWELL, ASSISTANT CITY ) | |
| MANAGER, individually and in his ) | |
| official capacity, and DONALD ROPER, ) | |
| CHIEF OF POLICE, individually and in his ) | |
| official capacity, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court upon Defendants' Motion for Summary Judgment. (Doc. No. 26). The motion is fully briefed and ripe for disposition.

I.     FACTUAL BACKGROUND

The facts that follow are undisputed. Plaintiff, an African-American female, began working for the City of Mount Holly ("the City") in August 2009 as the City's Finance Director. In 2015, Plaintiff began reporting directly to then City Manager, Defendant Danny Jackson, an African-American male. She worked there until July 2, 2020, when she was terminated by Assistant City Manager Miles Braswell. Throughout her employment, Plaintiff was an at-will employee.

Plaintiff's termination was based upon two findings following an administrative investigation and pre-disciplinary hearing. First, Plaintiff was found to have engaged in unsatisfactory job performance in that she failed to inform her supervisor, then City Manager

1

Danny Jackson, that a Finance Department intern – who was hired by Plaintiff and who worked under the "direction and control" of Plaintiff – had committed a felony by stealing cash that she had collected for the benefit of the City. Amd. Compl., Doc. 20, ¶ 36. The intern was an African-American female. Second, Plaintiff's termination was based upon a finding that she engaged in Detrimental Personal Conduct in violation of the City's Personnel Policy.

Plaintiff first learned of the intern's theft of City funds in late September or early October, 2019. When the intern returned to her seasonal employment with the City in December 2019, she confessed to Plaintiff that she had stolen money from the City while she was working in the Finance Department. The first time Plaintiff mentioned the intern's theft of City funds to the City Manager was on or about February 18, 2020 after the theft had been reported to the City Manager by Chief of Police Don Roper. Plaintiff was responsible for the hiring, firing and discipline of interns, and it was her duty as Finance Director to ensure that adequate controls were in place to prevent thefts such as that committed by the intern. *Id.* at ¶ 39, 46.

The Mount Holly Police Department ("MHPD") was contacted about the intern's theft of City funds, and as a result, a criminal investigation of the intern was initiated.[1] Plaintiff testified that she is unaware of any other situation involving theft of City funds or property in which the MHPD was contacted directly about the theft. Otis depo., Doc. No. 28-1, p.55. Because of the theft being brought to the attention of the MHPD, the MHPD was obligated to initiate a criminal investigation. *See* Roper depo., Doc. No. 28-4, pp. 13-14. City Manager Danny Jackson also testified that he was unaware of any other theft by a City employee that was reported directly to the MHPD, which distinguished the intern's theft of City funds from any other prior theft of City

---

[1] The criminal investigation of the intern was initiated because the theft of City funds was brought to the attention of the MHPD, and it is standard procedure for the MHPD to initiate a criminal investigation based upon this type of information being provided. *See* Doc. No. 28-4, pp. 13-14.

2

property or funds of which Mr. Jackson was aware during his employment with the City. *See* Jackson depo., Doc. No. 28-5, pp. 17, 19, 25-26, 47. Once Chief Roper became aware of the allegation that the intern had feloniously stolen money from the City which she had collected for the benefit of the City, he was obligated to immediately notify the City Manager. Doc No. 28-4, p. 35.

After the MHPD initiated its criminal investigation of the intern, Plaintiff told the intern that if anyone from the City contacted her for any reason, she was to let Plaintiff know. *See* Doc. No. 28-1, p. 59. The City concluded that this directive constituted an attempt by Plaintiff to hinder an ongoing police investigation. *See* Doc. No. 28-2, p. 2.

The intern was able to steal City funds she received while working in the Finance Department because Plaintiff, as the Finance Director, had never put in place checks and balances to prevent such a theft of cash received by employees of the Finance Department. An independent audit of the City's financial statements was performed by an independent auditor for the period of July 1, 2019 through June 30, 2020, which covered the last year of Plaintiff's employment with the City. The auditor's report found that Plaintiff's failure to have controls in place to monitor cash collections during the time the intern was employed by the City constituted a "material weakness" regarding the likelihood of errors in the City's financial reporting. Doc. No. 57-2, pp. 89-90, 93. The independent audit found that procedures in place under Plaintiff's management of the Finance Department were a material weakness and "ineffective because of the absence of adequate monitoring procedures to evaluate compliance with the control policies. Effect: Errors in financial reporting could occur. City's assets have been misappropriated." *Id.* at p. 93.

3

Case 3:20-cv-00685-GCM   Document 58   Filed 05/16/22   Page 3 of 13

Because of the material weaknesses that were identified by the independent audit of the City's Finance Department while it was under Plaintiff's management, the North Carolina Department of the State Treasurer wrote to the Mayor of Mount Holly to express the State's concerns with the material weaknesses identified by the independent audit. *See* Doc. No. 26-9. Among the concerns expressed by the State Treasurer was the Finance Department's "ineffective monitoring of control over cash collections." *Id*. at p. 1. This ineffective monitoring is the weakness in checks and balances that permitted the intern to steal City funds undetected for some period of time.

Prior to her termination, Plaintiff was provided with a pre-disciplinary letter dated June 15, 2020 and a face-to-face pre-disciplinary hearing on June 18, 2020. At the pre-disciplinary hearing, Plaintiff offered her responses to the allegations in the pre-disciplinary letter dated June 15, 2020, and she also provided written responses to the allegations in the letter. Following the pre-disciplinary hearing on June 18, 2020, Plaintiff received the July 2, 2020 letter from Assistant City Manager Miles Braswell terminating her employment.

Upon Plaintiff's termination from employment by Defendant Braswell, she was afforded an opportunity to appeal her discharge to the City Manager, Defendant Danny Jackson, which she did. Plaintiff submitted her appeal in writing to Mr. Jackson, and after consideration of the appeal, Mr. Jackson upheld Plaintiff's termination effective July 2, 2020. Mr. Jackson was thus the final decision maker regarding Plaintiff's termination.

Plaintiff asserts that she was treated more harshly that white males who had engaged in similar misconduct. Department Head 1 ("DH1"), white male, serves as a Department Head for the City. The misconduct that Plaintiff alleges DH1 engaged in is dissimilar to Plaintiff's misconduct in that he did not fail to provide the City Manager with information that should have

4

been provided, and he did not attempt to obstruct an ongoing criminal investigation by the MHPD. *See* Braswell depo., Doc. No. 28-3, pp. 39-40, 42, 47.

Department Head 2 ("DH2"), white male, was terminated from employment by the City after accumulating several policy infractions such as vacation and scheduling issues as well as work attendance. *See id*. at pp. 43-45. His misconduct was likewise dissimilar to that of Plaintiff in that he did not fail to provide the City Manager with information that should have been provided, and he did not attempt to obstruct an ongoing criminal investigation. *Id*. at pp. 42-45. Nowhere in Plaintiff's Amended Complaint did she allege she was treated less favorably than DH1 or DH2 with respect to the terms and conditions of her employment.

Progressive discipline was not implemented regarding Plaintiff's sustained misconduct because her misconduct was so egregious. *See* Jackson depo., Doc. No. 28-5, pp. 29, 59. On the contrary, the workplace conduct of DH1 was not egregious. *Id*., pp. 64-65.

Another City of Mount Holly Department Head, the Human Resources ("HR") manager, white female, was also terminated based upon events surrounding the theft of City funds by the Finance Department intern. Like Plaintiff, the City alleged and concluded that the HR Director had engaged in Detrimental Personal Conduct in violation of the City's personnel policies. *See* Doc. No. 28-7. The HR Director appealed her recommended termination to Mr. Jackson, and he upheld her termination from employment with the City. As with the Plaintiff, progressive discipline was not implemented in the HR Director's termination.

A white female was hired to fill Plaintiff's position of Finance Director, but nowhere in her Amended Complaint does Plaintiff allege the white female was less qualified than Plaintiff.

Plaintiff filed her Amended Complaint on October 28, 2021 (Doc. No. 20), alleging six causes of action including: (1) Race and sex discrimination under Title VII, 42 U.S.C. § 1981,

5

and 42 U.S.C. § 1983; (2) Retaliation under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983; (3) Americans with Disabilities Act (issues of reasonable accommodation, discharge and retaliation); (4) Fourteenth Amendment Due Process violation pursuant to 42 U.S.C. § 1983; (5) Wrongful termination in violation of North Carolina public policy; and (6) Punitive Damages. Defendants move for summary judgment as to each of Plaintiff's claims.

## II. DISCUSSION

### A. Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.* The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the

6

nonmoving party." *Anderson*, 477 U.S. at 248; *accord Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id.* at 249–50.

### B. Plaintiff's First through Fourth and Sixth Claims for Relief

A plaintiff who responds to a defendant's Motion for Summary Judgment but fails to refute the defendant's summary judgment allegations is deemed to have abandoned those claims left unrefuted. *See*, *e.g.*, *Battle v. N.C. Dep't of Pub. Safety - Prisons*, No. 1:17-CV-174-FDW, 2019 WL 2428715, at *21 (W.D.N.C. June 6, 2019) (Because plaintiff did not refute defendant's summary judgment allegations, plaintiff's claims are deemed abandoned).

In her Response to Defendants' Motion for Summary Judgment, Plaintiff failed to refute any of the undisputed material facts set forth above. Nor did Plaintiff refute Defendants' legal arguments and authorities cited in support of Defendants' Motion for Summary Judgment as it relates to the following Claims for Relief in Plaintiff's Amended Complaint: (1) Plaintiff's First Claim for Relief for Race and Gender Discrimination pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983; (2) Plaintiff Second Claim for Relief alleging retaliation under 42 U.S.C. § 1981 and 42 U.S.C. § 1983; (3) Plaintiff's Third Claim for Relief under the Americans with

7

Disabilities Act (alleging issues of reasonable accommodation, discharge and retaliation); (4) Plaintiff's Fourth Claim for Relief alleging a Fourteenth Amendment Due Process violation pursuant to 42 U.S.C. § 1983; and (5) Plaintiff's Sixth Claim for Relief asserting a claim for Punitive Damages under Title VII. Because Plaintiff has offered no substantive response to Defendants' Motion with regard to these five Claims for Relief, she is deemed to have abandoned these claims. Therefore, the Court grants summary judgment in favor of Defendants as to these five claims based upon the undisputed material facts and the arguments and authorities set forth in Defendants' Memorandum of Law in support of their Motion for Summary Judgment. *See* Doc. No. 26-1.

### C. Plaintiff's First Claim for Relief pursuant to Title VII

Plaintiff alleges race and gender discrimination pursuant to 42 U.S.C. § 2000, Title VII of the Civil Rights Act of 1964. Under Title VII, 42 U.S.C. § 2000e, *et seq.*, it is unlawful for any covered employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex…." *See* 42 U.S.C. § 2000e-2(a)(1).

The Court notes at the outset that to the extent Plaintiff seeks to bring Title VII claims against the individual Defendants, these claims fail as a matter of law. It is well settled that liability under Title VII of the Civil Rights Act of 1964 does not attach to individuals. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). Instead, employers are solely liable for Title VII violations. *Id*; s*ee also Willis v. Cleveland Cty., N. Carolina*, No. 1:18-CV-00292-MR-WCM, 2020 WL 3578297 at *6 (W.D.N.C. July 1, 2020) (Supervisors are not liable in their individual capacities for Title VII violations; rather, employers are solely liable for Title VII

8

violations). As established in Plaintiff's Amended Complaint, the City was her employer. *See* Doc. 20, ¶ 8. Therefore, the City is the only proper Defendant as to Plaintiff's Title VII claims.

To establish a prima facie case of race or sex discrimination under Title VII, Plaintiff must produce evidence that (1) she is a member of a protected class; (2) her employer took an adverse employment action against her; (3) at the time of the adverse action, she was performing her job at a level that met her employer's legitimate job expectations; and (4) she was replaced by a person outside of her protected class who was similarly qualified or less qualified and/or that she was disciplined more severely for conduct similar to that for which a non-protected employee received more lenient treatment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). While it is undisputed that Plaintiff is a member of a protected class and that she suffered an adverse employment action, Plaintiff cannot establish the last two elements of her prima facie case.

While Plaintiff contends that she was performing her job at a level that met the City's legitimate job expectations, the record before the Court undeniably shows otherwise. Plaintiff offers the testimony of City Manager Danny Jackson, who stated that *prior to* the serious conduct for which she was terminated, Plaintiff was performing at an acceptable level. This evidence is insufficient to show that at the time of her termination she was performing at an acceptable level.

In addition, Plaintiff fails to offer any evidence that she was treated less favorably than Caucasian males or that the person who replaced her was less qualified. In fact, Plaintiff does nothing more that restate the conclusory allegations in her Amended Complaint.

Even if Plaintiff could succeed in establishing a prima facie case, the Defendants have set forth their legitimate non-discriminatory, non-retaliatory reasons for Plaintiff's termination.

9

Once an employer-defendant has done so, the burden then shifts to the plaintiff to prove that the employer's legitimate non-discriminatory reasons are mere pretext for intentional discrimination. *See Adams v. Trs. Of Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (To demonstrate pretext, Plaintiff must prove both that that the employer's reason was false, and discrimination was the real reason). Here, Plaintiff has failed to respond to Defendants' legitimate non-discriminatory, non-retaliatory reasons in her Response. Accordingly, the Court grants summary judgment in favor of the Defendants as to Plaintiff's race and gender discrimination claims under Title VII.

### D. Plaintiff's Claim of Retaliation under Title VII

In her Second Claim for Relief, Plaintiff alleges that she was retaliated against in violation of Title VII. Title VII prohibits retaliation against an employee when, in relevant part, the employee "has opposed any practice made an unlawful employment practice" under Title VII." 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must prove: (1) she engaged in protected conduct; (2) she suffered an adverse action; and (3) a causal link exists between the protected conduct and the adverse action. *See A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011). Employees engage in protected conduct when, inter alia, they "complain to their superiors about suspected violations of Title VII." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003).

Once a prima facie case of retaliation is established, the burden then shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse action. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). A plaintiff must thereafter demonstrate that the employer's reason was a mere pretext for retaliation by showing "both that the reason was false

10

and that discrimination was the real reason for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (internal quotation marks omitted). Significantly, the Supreme Court has held that the protected activity by the employee must be the but-for, direct cause of the adverse employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.").

Plaintiff argues that she engaged in protected activity by expressing concern that the intern was being criminally investigated because of her race. Even if Plaintiff did engage in protected activity, she is unable to establish that her protected activity was the "but-for" cause of her termination. Rather, the undisputed facts establish that she was terminated for legitimate reasons unrelated to any protected activity. And even if Plaintiff could establish a prima facie case of retaliation, once again, Defendant has legitimate, non-discriminatory and non-retaliatory reasons for terminating her employment, and Plaintiff makes no showing to suggest that these reasons are pretextual. Accordingly, her claim for retaliation pursuant to Title VII fails.

### E. Plaintiff's Claim of Wrongful Discharge in Violation of Public Policy

In her Fifth Claim for Relief, Plaintiff alleges that she was terminated in violation of North Carolina public policy. North Carolina municipalities enjoy governmental immunity from state common-law tort claims arising out of their performance of governmental, as opposed to proprietary functions. *Patrick v. Wake Cnty. Dep't of Human Servs.*, 655 S.E.2d 920, 923 (N.C. Ct. App. 2008). Plaintiff has failed to assert waiver of governmental immunity in her Amended Complaint, which she is required to do to proceed with this Claim for Relief. *See Suarez v. Charlotte-Mecklenburg Sch.*, 123 F. Supp. 2d 883, 891–92 (W.D.N.C. 2000) (Plaintiff is required to affirmatively assert waiver of governmental immunity, and in the absence of such an

11

allegation of waiver, the complaint does not state a cause of action). Here, the actions of Defendants Braswell and Jackson in managing Plaintiff's employment and terminating her employment constituted governmental functions carried out in their official capacity. *See*, *e.g.*, *Beck v. City of Durham*, 573 S.E.2d 183, 189–90 (N.C. Ct. App. 2002) (City, Chief of Police, and City Manager immune from suit based on wrongful termination based upon governmental immunity). Therefore, Plaintiff's failure to allege waiver of governmental immunity is fatal to this Claim for Relief, and she has failed to state a cause of action for wrongful discharge in violation of North Carolina public policy.

Even if Plaintiff had properly plead a waiver of governmental immunity, however, her claim still fails. An action for wrongful discharge lies only against Plaintiff's employer, the City of Mount Holly, and not against the individual Defendants. In *Sides v. Duke University*, 328 S.E.2d 818 (N.C. Ct. App.), *disc. rev. denied*, 333 S.E.2d 490 (N.C. 1985), the North Carolina Court of Appeals held that an action for wrongful discharge will lie only against an employer, not against individual employees. *See also Houpe v. City of Statesville*, 497 S.E.2d 82, 89 (N.C. Ct. App. 1998). Federal courts considering this issue have followed *Sides*. *See Phillips v. J.P. Stevens & Co.*, 827 F. Supp. 349, 353 (M.D.N.C. 1993); *Iglesias v. Wolford*, 667 F.Supp.2d 573, 590 (E.D.N.C. 2009) ("Under North Carolina law, a plaintiff may only bring a wrongful discharge action against the plaintiff's employer, not against the employer's agents").

In her Amended Complaint, Plaintiff failed to plead any North Carolina public policy that was allegedly violated by the City's termination of her employment. In her response to Defendants' Motion for Summary Judgment, however, Plaintiff identifies for the first time the

public policy upon which she relies as that which is found in N.C. Gen. Stat. § 143-422.2.[2] Plaintiff concedes that alleged violations of N.C. Gen. Stat. § 143-422.2 are governed by the same legal standards as claims of discrimination under Title VII of the Civil Rights Act of 1964. As her Title VII claims have failed, her wrongful discharge claim likewise fails.

    IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment is hereby GRANTED.

Signed: May 16, 2022

Graham C. Mullen
United States District Judge

---

[2] This statute states in pertinent part: "It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race . . . sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2.